BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | MDL No. 3113 |

**BRIEF IN OPPOSITION TO PLAINTIFFS CHIUCHIARELLI ET AL.'S MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA AND IN SUPPORT OF TRANSFER TO AND CONSOLIDATION IN THE DISTRICT OF NEW JERSEY**

Direct purchaser Plaintiffs (a) Shoshi Goldfus ("Plaintiff Goldfus"),[1] (b) Deborah Collins, Hunter Collins, and Henry Morales ("Collins Plaintiffs"),[2] (c) Richard Dwyer and Aimen Halim ("Dwyer Plaintiffs"),[3] and (d) Ultra Home Set, LLC ("Plaintiff Ultra Home Set")[4] (together, "Plaintiffs"), submit this Brief in Opposition to Plaintiffs Chiuchiarelli, et al.'s ("Chiuchiarelli Plaintiffs") Amended Motion to Transfer Actions to the Northern District of California for Coordinated or Consolidated Pretrial Proceedings (MDL No. 3113, Dkt. 6). Plaintiffs agree centralization is appropriate, but support transfer of the Related Actions to the United States District Court for the District of New Jersey for coordinated pretrial proceedings.

Crucial to Plaintiffs' Motion and Opposition is a fact initially[5] ignored by the Chiuchiarelli Plaintiffs' Motion to Transfer – the action filed by the United States Department of Justice and 16 state attorneys general (the "Government action") is governed by 28 U.S.C. §

---

[1] Plaintiff in *Goldfus v. Apple Inc.*, Case No. 2:24-cv-04108 (D.N.J.).
[2] Plaintiffs in *Collins v. Apple Inc.*, Case No. 3:24-cv-01796 (N.D. Cal.).
[3] Plaintiffs in *Dwyer et al v. Apple Inc.*, Case No. 5:24-cv-01844 (N.D. Cal.)
[4] Plaintiff in *Ultra Home Set, LLC v. Apple Inc.*, Case No. 2:24-cv-04223 (D.N.J.).
[5] The Chiuchiarelli Plaintiffs' initial motion to transfer to the Northern District of California sought Section 1407 transfer of the Government action as well (Dkt. 1 at 5). The Chiuchiarelli Plaintiffs subsequently amended their motion to exclude the Government action. (Dkt. 6 at 20 n. 1).

1

1407(g), which provides the Panel no authority to transfer the Government action from the District of New Jersey. 28 U.S.C. § 1407(g) (providing that "[n]othing in this section shall apply to any action in which the United States or a State is a complainant arising under the antitrust laws.").

That the Government action will proceed in the District of New Jersey strongly favors the Panel transferring and consolidating the indisputably related private actions in the District of New Jersey as well. Doing so will ensure judicial economy and the fair administration of justice, as Chiuchiarelli Plaintiffs are correct that the Government action concerns substantially the same facts and allegations as the private actions. It makes sense to coordinate the Government and private actions in one court. In reality, the only judicial district in which the Government and private actions can be coordinated is the District of New Jersey.

The District of New Jersey is also the center of gravity, which currently has the majority of support among the pending private cases.[6] It has already moved towards ensuring judicial economy, coordination, and the fair administration of justice with all twelve cases having been assigned to Judge Julien Xavier Neals, *who has also been assigned to the Government action*.[7] To date, the Northern District of California has not consolidated the ten private cases currently pending there with one district court judge, and the plaintiffs in at least two cases pending in the Northern District of California have requested or support transfer to the District of New Jersey to foster judicial economy and facilitate coordination with the Government action. To ensure judicial economy, facilitate coordination, and promote the fair administration of justice, Plaintiffs

---

[6] Thirteen of the twenty-five pending private cases are currently pending in the District of New Jersey, and as discussed more below, at least two other cases in the Northern District of California currently support transfer to the District of New Jersey.

[7] One case, *Aceto v. Apple Inc.*, 2:24-cv-05663 (D.N.J), was filed the same day as this response and has not yet been assigned.

respectfully request that the Panel centralize the private actions in the District of New Jersey with Judge Neals.

## OVERVIEW OF CASES FILED TO DATE

On March 21, 2024, the United States and 16 states filed a civil lawsuit against Apple, Inc. ("Defendant" or "Apple"), accusing Apple of having violated Section 2 of the Sherman Act (15 U.S.C. § 2), as well as various state competition laws. *United States v. Apple, Inc.*, No. 2:24-cv-04055 (D.N.J.). The venue for that filing was the District of New Jersey and the case has been assigned to the Honorable Julien Xavier Neals.

The day after the Government action was filed, two civil follow-on direct purchaser class actions involving the same claims asserted in the Government action were filed. One was filed by Plaintiff *Goldfus* in the District of New Jersey and has also been assigned to Judge Neals. *Goldfus v. Apple Inc.*, No. 2:24-cv-04108 (D.N.J.). The second was filed by the *Collins* Plaintiffs in the Northern District of California and is currently assigned to Chief District Judge Seeborg. *Collins, et al. v. Apple Inc.*, No. 3:24-cv-01796 (N.D. Cal.). By motion dated April 4, 2024, the *Collins* Plaintiffs sought to transfer their action to the District of New Jersey under 28 U.S.C. § 1404. Apple did not oppose transfer and the motion was subsequently stayed pending this Panel's decision on transfer. *See id.*, ECF Nos. 10 & 15.

Since then, nineteen additional direct and four additional indirect purchaser class actions have been filed, including the *Chiuchiarelli, et al. v. Apple Inc.*, No. 3:24-cv-01895 (N.D. Cal.) action ("*Chiuchiarelli* Action") (pending direct purchaser action with District Judge Vince Chhabria). *See also Schermer v. Apple Inc.*, No. 4:24-cv-01815 (N.D. Cal.) (pending indirect purchaser action with District Judge Araceli Martinez-Olguin); *Dwyer, et al. v. Apple Inc.*, No. 3:24-cv-01844 (N.D. Cal.) (pending direct purchaser action with District Judge P. Casey Pitts);

*Ultra Home Set, LLC v. Apple Inc.*, 2:24-cv-04223 (D.N.J.) (pending direct purchaser action with District Judge Neals); *Kolinsky, et al v. Apple Inc.*, 2:24-cv-04232 (D.N.J.) (pending indirect purchaser action with District Judge Neals); *Levine v. Apple Inc.*, 2:24-cv-04284 (D.N.J.) (pending direct purchaser action with District Judge Neals); *Kurtz v. Apple Inc.*, 2:24-cv-04355 (D.N.J.) (pending direct purchaser action with District Judge Neals); *Kyndberg v. Apple Inc.*, 0:24-cv-01107 (D. Minn.) (pending direct purchaser action with District Judge Nancy Brasel); *Miller, et al. v. Apple Inc.*, 5:24-cv-01988 (N.D. Cal.) (pending direct purchaser action with District Judge Rita Lin); *Watson v. Apple Inc.*, 2:24-cv-04445 (D.N.J.) (pending direct purchaser action with District Judge Neals); *Loewen v. Apple Inc.*, 3:24-cv-02006 (N.D. Cal.) (pending indirect purchaser action with Magistrate Judge Beeler); *Giamanco v. Apple Inc.*, 1:24-cv-02694 (N.D. Ill.) (pending direct purchaser action with Magistrate Judge Sara Ellis); *Moody, et al v. Apple Inc.*, 2:24-cv-04560 (D.N.J.) (pending direct purchaser action with District Judge Neals); *Siano, et al. v. Apple Inc.*, 2:24-cv-04568 (D.N.J.) (pending direct purchaser action with District Judge Neals); *Leonard v. Apple Inc.*, 3:24-cv-02156 (N.D. Cal.) (pending direct purchaser action before Judge James Donato); *Melkowski v. Apple Inc.*, 2:24-cv-04827 (D.N.J.) (pending direct purchaser action with District Judge Neals); *Herreiras, et al. v. Apple Inc.*, 5:24-cv-02199 (N.D. Cal.) (pending direct purchaser action with Magistrate Judge Alex Tse); *Kane v. Apple Inc.*, 5:24-cv-02193 (N.D. Cal.) (pending direct purchaser action with District Judge Haywood Gilliam, Jr.); *Schwartz, et al. v. Apple Inc.*, 5:24-cv-02213 (N.D. Cal.) (pending direct purchaser action with District Judge Donna M. Ryu); *Crucco v. Apple Inc.*, 2:24-cv-05281 (D.N.J.) (pending direct purchaser action with District Judge Neals); *Marie, et al. v. Apple Inc.*, 2:24-cv-05541 (pending indirect purchaser action with District Judge Neals); *Daines, et al. v. Apple Inc.*, 2:24-cv-05359 (D.N.J.) (pending direct purchaser action with District Judge Neals); and *Aceto v.*

*Apple Inc.*, 2:24-cv-05663 (D.N.J) (pending direct purchaser action filed April 26, 2024, assignment pending).

The Government action and all of the private cases currently pending in the District of New Jersey have been assigned to Judge Neals. Of the twenty-five private actions filed to date, thirteen are pending in the District of New Jersey with Judge Neals, ten are pending in the Northern District of California, one is pending in the Northern District of Illinois, and one is pending in the District of Minnesota. Significantly, the ten actions pending in the Northern District of California have not all been assigned to one judge and, instead, are being handled by eight district court judges and two magistrate judges. And notably, the *Collins* Plaintiffs have filed a motion to transfer their cases from the Northern District of California to the District of New Jersey under 28 U.S.C. § 1404, without any opposition from Apple. The *Dwyer* Plaintiffs likewise support transfer to New Jersey (whether via § 1404 or § 1407), and conferred to that effect with counsel for Apple. But given Chief Judge Seeborg's decision to stay the § 1404 motion in *Collins* and the intervening filing of the MDL petition before the Panel, the *Dwyer* Plaintiffs opted to conserve judicial resources and hold in abeyance any additional motion practice under § 1404. The result is that, in addition to the Government action, fifteen of the twenty-five Related Actions are either pending in the District of New Jersey with Judge Neals or support transfer to the District of New Jersey, making New Jersey the clear center of gravity for these proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Government action and the Related Actions concern the market for performance smartphones and smartphones sold in the United States. *Goldfus* ¶ 1; *see, e.g.*, *Collins* ¶ 1; *Dwyer* ¶ 1; *Ultra Home Set, LLC,* ¶ 1; *Melkowski* ¶ 1; *Chiuchiarelli* ¶ 9. Defendant is a global

technology company with headquarters in Cupertino, California. *Goldfus* ¶ 20; *see, e.g.*, *Collins* ¶ 22; *Dwyer* ¶ 10; *Ultra Home Set, LLC,* ¶ 20; *Melkowski* ¶ 9; *Chiuchiarelli* ¶ 24. Defendant is also one of the world's most valuable publicly traded companies, with a market capitalization over $2.5 trillion. *Id.* In fiscal year 2023 alone, Defendant generated annual net revenues of $383 billion and net income of $97 billion. *Id.*; *see, e.g.*, *Collins* ¶ 22; *Dwyer* ¶ 10; *Ultra Home Set, LLC,* ¶ 20; *Melkowski* ¶ 9; *Chiuchiarelli* ¶ 24. Defendant's iPhone sales have made up the majority of its revenues every year since 2012. *Goldfus* ¶ 21; *see, e.g.*, *Collins* ¶ 23; *Dwyer* ¶ 11; *Ultra Home Set, LLC,* ¶ 21; *Melkowski* ¶ 10; *Chiuchiarelli* ¶ 25.

The complaints allege that the successes reflected in Defendant's annual revenue and market share, at least in part, arose from Defendant's illegal monopolization of the performance smartphone and smartphone markets in the United States, which has caused consumers to pay supracompetitive prices for iPhones. *Goldfus* ¶ 218; *see, e.g.*, *Collins* ¶ 195; *Dwyer* ¶ 197; *Ultra Home Set, LLC,* ¶ 218; *Melkowski* ¶ 227; *Chiuchiarelli* ¶ 163. The complaints further allege that Defendant unlawfully maintains its monopoly power over these markets by imposing a set of contractual and technological restrictions, including through Application Programming Interfaces ("APIs") and other critical access points in the smartphone ecosystem, to manipulate and control the behavior of its consumers and innovation of third parties. *Goldfus* ¶ 72-74; *see, e.g.*, *Collins* ¶ 49-51; *Dwyer* ¶ 79-81; *Ultra Home Set, LLC,* ¶ 72-74; *Melkowski* ¶ 78-80; *Chiuchiarelli* ¶ 91. As a result of Defendant's anticompetitive behavior, the complaints allege that Defendant has artificially raised the cost of its iPhones to supracompetitive levels to the detriment of consumers who purchased an iPhone, in violation of federal and state antitrust laws.

The Related Actions involve the same Defendant and each alleges that Defendant used unlawful anticompetitive means to monopolize or attempt to monopolize the performance

smartphone and smartphone markets and/or the smartwatch market in the United States. Each Related Action shares the same core allegations that Defendant used its monopoly power to harm competition in the relevant markets and caused consumers to pay supracompetitive prices for iPhones. And each of the Related Actions seeks compensatory damages and injunctive relief on behalf of direct or indirect purchasers of iPhones in the United States.

Each of the Related Actions are also in a similar procedural posture as all are in the very earliest stages of litigation and no dispositive motions have been filed and discovery has yet to commence.

## ARGUMENT

Plaintiffs agree with Chiuchiarelli Plaintiffs that consolidation of the Related Actions is appropriate here. However, as set forth below, the proper venue for the Panel to coordinate the Related Actions is the District of New Jersey.

### I.     CENTRALIZATION OF THE RELATED ACTIONS IS WARRANTED UNDER 28 U.S.C. § 1407

"When civil actions involving one or more common questions of fact are pending in different districts," this Panel may transfer such actions "to any district for coordinated or consolidated pretrial proceedings," if transfer would serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because each of these requirements are met here, Plaintiffs agree with Chiuchiarelli Plaintiffs that the Panel should transfer the Related Actions to a single district for coordinated pretrial proceedings.

A.      **The Related Actions Involve Common Questions of Fact**

For the purposes of Section 1407, common questions of fact exist where multiple actions assert similar "core factual allegations" and "can be expected to focus on a significant number of common events, defendants, and/or witnesses." *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).

Here, the Related Actions share several common questions of fact, thereby satisfying the requirements of Section 1407(a). For example, the Related Actions are consumer class actions for purchasers of iPhones who suffered economic losses due to Apple's monopolization in the performance smartphone and smartphone markets. *See, e.g.*, *Goldfus* ¶ 218; *Collins* ¶ 195; *Dwyer* ¶ 197; *Ultra Home Set, LLC,* ¶ 218; *Melkowski* ¶ 227; *Chiuchiarelli* ¶ 10. They also all allege Apple harms competition by imposing contractual and technological restrictions, including through APIs and other access points to control the behavior of consumers and third parties, and has created a moat around its monopoly. These common questions of fact are precisely why the complaints in the Related Actions share so many significant similarities and allegations.

B.      **Centralization Would Serve the Convenience of the Parties and Witnesses and Promote Judicial Economy**

Transfer and centralization of the Related Actions for consolidated or coordinated proceedings would undoubtedly serve the interests of "the convenience of parties and witnesses and . . . promote the just and efficient conduct" of the Related Actions. 28 U.S.C. § 1407(a).

With respect to the parties and witnesses, centralization is appropriate because the plaintiffs in the Related Actions now pending in three different districts will undoubtedly pursue substantially similar testimony from witnesses, documents from the Defendant and third parties, and other evidence from Defendants, and perhaps the government, during the investigation and

discovery phases of the proceedings. This is precisely what Section 1407 contemplates and centralizing the Related Actions now will have "the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L. 2013); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands.").

With respect to judicial economy, the fact that there are already thirteen cases pending in the District Court of New Jersey with Judge Neals, in addition to the government's case, with potentially others to join, is significant to promoting judicial economy. *See e.g.*, *In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358 (J.P.M.L. 2020) (centralizing fourteen actions pending in three districts in the district where "half of the related actions . . . are pending"); *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) (finding consolidation and transfer to the Eastern District of Tennessee appropriate where the majority of the related actions were already pending there before a single judge). Given the likelihood that additional Related Actions will be filed, consolidation under Section 1407 now would be the most efficient means of conducting pretrial proceedings. *See, e.g.*, *In re: Edward H. Okun I.R.S. 1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) ("[D]enial of either of Wachovia's transfer motions could engender delay, as the Panel may be asked to revisit the question of Section 1407 centralization. Centralizing these

actions now under Section 1407 should streamline resolution of this litigation to the overall benefit of the parties and the judiciary."); *In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (rejecting alternatives to centralization because they "would delay the resolution of the common core issues in this litigation").

For these reasons, the Panel should transfer and centralize the Related Actions in the interests of justice and efficiency.

### C. The Panel Routinely Centralizes Related Actions Involving Alleged Violations of Antitrust Laws and the Related Actions Involve Common Questions of Law

The Panel routinely finds that transfer and centralization is appropriate in multidistrict litigation involving alleged violations of antitrust laws. *See, e.g.*, *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) ("Plaintiffs in all the actions listed on Schedule A assert similar claims for violations of federal and state antitrust and consumer protection laws."); *In re Visa/Mastercard Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) ("All six actions share factual questions relating to allegations that Visa and MasterCard's 'Honor All Cards' policy violates the Sherman Antitrust Act."); *In re Polyester Staple Antitrust Litig.*, 259 F. Supp. 2d 1376, 1377 (J.P.M.L. 2003) (cases arising out of alleged price fixing shared common factual questions); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 296 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) ("All actions share factual questions related to the existence, scope and effect of an alleged conspiracy to fix the price of international shipments of liquid chemicals in the United States.").

Here, as set forth above, each Related Action is brought on behalf of a nationwide class and each asserts violations of federal and/or state antitrust laws by Defendant. Significantly, each of the Related Actions share common questions of law pertinent to Defendant's conduct and the impact of that conduct on the respective classes. *See In re Cotton Yarn Antitrust Litig.*, 336 F.

Supp. 2d 1383, 1384 (J.P.M.L. 2004) ("All actions share factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of cotton yarn in the United States and/or to allocate the U.S. cotton yarn market and customers."); *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("All of the actions assert overlapping putative nationwide classes of direct purchasers of domestic airfare, and all the actions assert antitrust violations of Section 1 of the Sherman Act."); *In re K-Dur Antitrust Litig.*, 176 F. Supp. 2d 1377, 1378 (J.P.M.L. 2001) (similar).

The Panel presumes that a single district judge is capable of handling legal claims in related actions for violations of both state and federal law, and frequently centralizes direct and indirect purchaser actions together. *See, e.g.*, *In re: Lidoderm Antitrust Litig.*, 11 F. Supp. 3d. 1344, 1345 (J.P.M.L. 2014) ("All of the actions are putative nationwide class actions on behalf of either direct or indirect purchasers[.]"); *In re Capacitors Antitrust Litig. (No. III)*, 285 F. Supp. 3d 1353, 1355 (J.P.M.L. 2017). Indirect purchaser plaintiffs in the Related Actions bring claims for violations of New York state antitrust laws, whereas Plaintiff Goldfus brings claims for violations of New Jersey state antitrust laws, and other Related Actions assert various other state antitrust law claims. Indeed, the Panel has "often [] held that the assertion of different legal claims or additional facts is not significant where, as here, the actions arise from a common factual core" and that the transferee judges are more than capable of applying the laws of multiple states. *In re Insulin Pricing Litig.*, No. MDL 3080, 2023 WL 5065090, at *2 (J.P.M.L. Aug. 3, 2023).

The Related Actions have many common questions of law, that will also result in many overlapping pretrial issues, including the adequacy of the claims and allegations. In addition, because each private action is a class action, consolidation and transfer will eliminate the

11

possibility of inconsistent rulings on class certification from courts in multiple districts. *See, e.g.*, *In re: Zimmer Durom Hip Cup Prod. Liab. Litig.*, 717 F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) ("Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel, and the judiciary.").

## II. THE PANEL SHOULD TRANSFER THE RELATED ACTIONS TO THE DISTRICT OF NEW JERSEY

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the positions of the parties; and (4) the experience of the transferee judge and district in navigating the "nuances of complex and multidistrict litigation[.]" *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014).

As discussed above, pursuant to 28 U.S.C. § 1407(g), the Panel lacks authority to transfer the Government action pending before Judge Neals from the District of New Jersey. The private cases could, however, be coordinated with the Government action, to the extent Judge Neals deems such coordination appropriate.

The majority of private cases — fifteen out of twenty-five — are in, or support transfer to, the District of New Jersey, weighing in favor of transfer there. *See, e.g.*, *In re Tasigna (Nilotinib) Prods. Liab. Litig.*, 555 F. Supp. 3d 136, 1365 (J.P.M.L. 2021) (Middle District of Florida was the appropriate transferee district as "[m]ore cases are pending in this district than any other district."). The *Chiuchiarelli* Plaintiffs' representation that a majority are in the Northern District of California is outdated. A further two plaintiffs in the Northern District of California, *Collins* and *Dwyer*, support transfer of their cases to the District of New Jersey. The

12

*Collins* Plaintiffs, who join this motion, were the first to file in the Northern District of California. But as additional cases were filed in the District of New Jersey, it became clear that the gravity of this litigation lies in that district, where the Government action is pending. The *Collins* Plaintiffs therefore moved without opposition from Apple to transfer their case to the District of New Jersey, and the motion was stayed pending this panel's determination on transfer. *Collins, et al. v. Apple Inc.*, No. 3:24-cv-01796 (N.D. Cal.), ECF Nos. 10 & 15. The *Dwyer* Plaintiffs conferred with Apple's counsel concerning stipulating to transfer to New Jersey, and Apple indicated it would also not oppose their motion, but did not file to conserve judicial resources and in recognition that their motion to transfer would likely follow arguments duplicative to the matters raised in this briefing. The *Dwyer* Plaintiffs instead join this motion and agree that the center of gravity is the District of New Jersey, particularly given the Government action is there.

      The District of New Jersey has a track record of efficiency, routinely manages multidistrict antitrust litigation,[8] and has many qualified jurists – including Judge Neals, to whom the pending cases in the district have been assigned – who can manage this complex multi-party litigation. Judge Neals is an experienced lawyer, having a deep wealth of experience prior to his elevation to the bench of the District Court of New Jersey. He is a graduate of Morehouse College and Emory University School of Law. He worked both in private practice and as a seasoned public servant. He has served as Chief Judge of the Newark Municipal Court; Corporation Counsel for the City of Newark; and County Counsel for Bergen County. Since his confirmation to the bench, he has overseen several antitrust cases involving conduct in multiple

---

[8] *See, e.g.*, *In re: Ins. Brokerage Antitrust Litig.* (MDL 1663) and *In re: Lipitor Antitrust Litig.* (MDL 2332) among other mass tort, product liability, and data breach MDLs pending in the D.N.J.

jurisdictions. *See Veera Systems Inc. v. IQVIA Inc., et al.*, 2:19-cv-18558 (D.N.J.) (antitrust action alleging abuse of monopoly power with both federal and state law claims); *In re: Copaxone Antitrust Litig.*, 2:22-cv-01323 (D.N.J.) (antitrust class action regarding pharmaceutical drug pricing). He has also previously served as Trustee for the New Jersey State Bar Foundation and has been the recipient of numerous awards spanning his legal career, including the Caribbean American Heritage & Cultural Foundation's New Jersey Outstanding Public Service Award, the Volunteer Lawyers for Justice's Pro Bono Leader Award, the Essex County Bar Association's Walter A. Lucas Special Merit Award, and the United Negro College Fund's Benjamin E. Mays Excellence in Community Service Award. His experience makes him well-suited for this highly significant MDL.

The fact that Judge Neals is already assigned to the Government action provides the District of New Jersey, and Judge Neals specifically, a significant advantage as compared to any other judge or District. Judge Neals will inevitably hear and resolve many of the factual and legal issues pertinent to the overlapping Related Actions. This experience from the Government action with the facts and law pertinent to the Related Actions counsels in favor of transfer and consolidation before Judge Neals. Indeed, transfer and coordination of all the private class actions to the same district (and same judge) as the pending case filed by the Government will result in obvious efficiencies the Panel has long recognized. *See, e.g.*, *In re Mut. Fund Sales Antitrust Litig.*, 361 F. Supp. 638, 640 (J.P.M.L. 1973) ("While we cannot transfer the government action or order it included in coordinated or consolidated pretrial proceedings, 28 U.S.C. § 1407(g), we think that judicial efficiency would be promoted by having all actions under the supervision of the same judge."); *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373 (J.P.M.L. 2017) (consolidating the private class action cases in the Northern District of

California before Judge Koh, who had also been assigned to the Federal Trade Commission's (FTC) pending case against Qualcomm in order to prevent impeding the government's case and promote judicial economy); *In re Crop Protection Prods. Loyalty Program Antitrust Litig.*, 655 F. Supp. 3d 1380, 1382 (J.P.M.L. 2023) (consolidating ten follow-on class actions from three districts with the same judge assigned to the FTC case); *see also In re Salomon Bros. Treasury Sec. Litig.*, 796 F. Supp. 1537, 1538 (J.P.M.L. 1992) (consolidating 33 follow-on actions in the Southern District of New York, where government proceedings were already pending).

In addition to the advantage of experience, particularly with this case, as the Panel has already repeatedly concluded, the District of New Jersey possesses substantial resources and a convenient location suitable to an MDL of this import. *See, e.g.*, *In re Hypodermic Prods. Antitrust Litig.*, 408 F. Supp 2d 1356, 1357 (J.P.M.L. 2005) ("We conclude that the District of New Jersey . . . is well equipped with the resources that this complex antitrust docket is likely to require."); *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005) ("In concluding that the District of New Jersey is an appropriate forum for this docket, we note that i) the district offers an accessible metropolitan location that is geographically convenient for many of this docket's litigants and counsel; and ii) the district is equipped with the resources that this complex antitrust docket is likely to require.").

The District of New Jersey is also a convenient forum. It is an easily accessible metropolitan area supported by multiple major airports. Depositions and other physical discovery events could be coordinated with the Government action to minimize impact on witnesses and duplicative discovery. And, in an age where the bulk of information is stored and transmitted electronically, the District's distance from Apple's headquarters is not a significant factor. In contrast, the Northern District of California is not as suitable a venue for this action as the

District of New Jersey. The Government action will be litigated in the District of New Jersey, and a judge in another district would be less readily able to effectively coordinate across the Government action and the private actions, and would not have the benefit of the experience with respect to the facts and law pertinent to this particular case as compared to Judge Neals.

Therefore, the most appropriate and judicially efficient location for consolidation and transfer here is the District of New Jersey, where the Government action and most of the Related Actions are pending.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Panel to transfer and coordinate the Related Actions before the Hon. Julien Neals of the District of New Jersey.

Dated: April 26, 2024

Respectfully submitted,

By: */s/ Melinda R. Coolidge*
Melinda R. Coolidge
**HAUSFELD LLP**
888 16th Street, NW
Suite 300
Tel: (202) 540-7200
Fax: (202) 540-7201
mcoolidge@hausfeld.com

*Counsel for Plaintiff Goldfus and the Proposed Classes*

By: */s/ Steve W. Berman*
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

*Counsel for the Collins Plaintiffs and the Proposed Classes*

By: ___/s/ Dena C. Sharp___
Dena C. Sharp
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com

*Counsel for the Dwyer Plaintiffs and the Proposed Classes*

By: ___/s/ James E. Cecchi___
James E. Cecchi
**CARELLA BYRNE CECCHI BROADY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
jcecchi@carellabyrne.com

*Counsel for Plaintiff Ultra Home Set, LLC and the Proposed Classes*