**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| *In re Apple Inc. Smartphone Antitrust Litigation* | MDL No. 3113 |

**INTERESTED PARTY RESPONSE OF JOSEPH GIAMANCO
<u>IN OPPOSITION TO MOTION TO TRANSFER</u>**

Plaintiff Joseph Giamanco submits this Interested Party Response pursuant to JPML Rule 6.2(e), opposing in part the pending Motion to Transfer.  *See* Dkt. 1, 6.  Mr. Giamanco is the named plaintiff in *Giamanco v. Apple Inc.*, No. 24-cv-02694 (N.D. Ill.), a case designated a Potential Tag-Along Action.  Mr. Giamanco's complaint is unique.  It is brought exclusively on behalf of a class of Apple Watch owners alleging that Apple has engaged in anticompetitive conduct in relevant smartwatch markets.  Mr. Giamanco alleges that, among other conduct, Apple uses illegal horizontal agreements to limit smartwatch competition, disrupts the operation of competing smartwatches with software updates, and limits competitors' access to key smartwatch technologies such as messaging and digital wallets—all to monopolize relevant smartwatch markets.  By contrast, the Related Actions and other Potential Tag-Along Actions primarily target Apple's efforts to monopolize relevant *smartphone* markets.  Much of the conduct alleged in support of these claims on behalf of iPhone purchasers is irrelevant to the Apple Watch claims.  When the claims do mention the same technologies, such as messaging apps and digital wallets, the iPhone claims highlight the technologies as "middleware" that would otherwise enable switching to competing smartphones, and allege distinct conduct with respect to the technologies.

Mr. Giamanco takes no position on the movants' request to centralize claims on behalf of iPhone purchasers, but opposes centralization of any claims on behalf of Apple Watch purchasers.

The putative class action claims brought on behalf of Apple Watch and iPhone purchasers concern different conduct, are brought on behalf of different classes of plaintiffs, seek different relief, and can be pursued more efficiently and conveniently in separate proceedings.  If the Panel centralizes the iPhone claims, Mr. Giamanco respectfully submits that it should sever and remand the Apple Watch claims brought in *Chiuchiarelli v. Apple Inc.*, No. 24-cv-01895 (N.D. Cal.).

## **BACKGROUND**

The plaintiffs in *Chiuchiarelli* filed the instant motion to transfer and centralize the Related Cases before the U.S. District Court for the Northern District of California.  *See* Dkt. 1, 6, 6-2. Since then, additional cases, including Mr. Giamanco's, have been identified as Potential Tag-Along Actions.  *See* Dkt. 79-1.  All the Related Cases—and all the Potential Tag-Along Actions *except* Mr. Giamanco's—focus principally on claims on behalf of *iPhone purchasers* challenging Apple's monopolization of smartphone markets.

Mr. Giamanco brings claims only on behalf of *Apple Watch* purchasers.  *See* Dkt. 12-6 ("*Giamanco* Compl.") ¶¶ 179-203.  Mr. Giamanco brings no iPhone claims in part because the same counsel cannot represent Apple Watch and iPhone purchaser classes together in the same action.  *See* Part II, *infra*.  Nonetheless, one of the Related Actions, *Chiuchiarelli*, asserts Section 1 tying claims and California Unfair Competition Law claims on behalf of Apple Watch purchasers alongside claims on behalf of iPhone purchasers.  Five Potential Tag-Along Actions assert nearly identical iPhone and Apple Watch claims to the *Chiuchiarelli* claims.  *Leonard v. Apple Inc.*, No. 24-cv-02156 (N.D. Cal.); *Herrerias v. Apple Inc.*, No. 24-cv-02199 (N.D. Cal.); *Schwartz v. Apple Inc.*, No. 24-cv-02213 (N.D. Cal.); *Kane v. Apple Inc.*, No. 24-cv-02193 (N.D. Cal.); *Maxa v. Apple Inc.*, No. 24-cv-00639 (N.D. Cal.).  Those six cases and Mr. Giamanco's action are the only Related Cases or Potential Tag-Along Actions that bring Apple Watch claims.

<u>**ARGUMENT**</u>

"Section 1407 centralization should be the last solution after considered review of all other options." *In re Nat'l Grid Tax Gross-Up Adder Litig.*, 669 F. Supp. 3d 1381, 1382 (J.P.M.L. 2023). It is appropriate only when the movant proves that the actions involve "common questions of fact" and where transfer would advance "the convenience of parties and witnesses" and "promote the just and efficient conduct" of the actions. 28 U.S.C. § 1407(a); *see In re Acthar Gel Antitrust Litig.*, 543 F. Supp. 3d 1375, 1376 (J.P.M.L. 2021) (burden rests with "[p]arties seeking centralization"). Moreover, even if movants establish that certain claims should be centralized, the Panel may "separate" and decline to centralize "any claim" that fails to meet centralization requirements. 28 U.S.C. § 1407(a); *see, e.g.*, *In re Celexa & Lexapro Prod. Liab. Litig.*, 416 F. Supp. 2d 1361, 1363 (J.P.M.L. 2006) (remanding claims that did "not share sufficient questions of fact" with other centralized claims). Claims brought on behalf of Apple Watch purchasers are precisely the type of claims that should be separated from the claims of iPhone purchasers, and remanded prior to centralization.

**I.     The Apple Watch and iPhone Claims Are Factually Distinct**

The Apple Watch and iPhone claims are brought on behalf of purchasers of different products—Apple Watches versus iPhones. They involve different relevant markets (markets for smartwatches versus markets for smartphones), different conduct, different liability theories, and different damages. The parties supporting centralization either ignore the existence of the separate Apple Watch claims entirely, or assert without support that the Apple Watch claims overlap with the iPhone claims. But even a cursory examination of the claims proves that their differences vastly outweigh any factual overlap, and that any such overlap between the Apple Watch and iPhone claims is better addressed through discovery coordination, not centralization.

A.      **The Putative Class Action Claims Do Not Overlap**

The Apple Watch and iPhone claims are distinct putative class actions.  Membership in the classes turns on purchases of *different products in different markets*:  Apple Watches in relevant smartwatch markets and iPhones in relevant smartphone markets.  They allege *different conduct* in those markets:  Whereas the iPhone claims focus on Apple's efforts to limit competition between competing smartphones, the Apple Watch claims focus on Apple's efforts to limit iPhone owners' ability to purchase competing smartwatches.  *Compare, e.g.*, Dkt. 6-11 ("*Chiuchiarelli* Compl.") ¶¶ 139-196, *with id.* ¶¶ 197-207; *see also Giamanco* Compl. ¶¶ 179-203.  The claims are asserted in separate counts.  *See, e.g.*, *Chiuchiarelli* Compl. ¶¶ 139-207 (asserting Section 1 tying claim on behalf of Apple Watch purchasers and Section 2 monopolization claims on behalf of iPhone purchasers).  And they seek entirely *different damages*:  The Apple Watch purchasers seek overcharge damages based on the amounts they overpaid for their Apple Watches compared to what they would have paid in a competitive market, whereas the iPhone purchasers seek overcharge damages for their iPhone purchases.[1]  *See Chiuchiarelli* Compl. ¶¶ 104-105.

Where "class actions are certainly not overlapping," the Panel has consistently been "ready to deny transfer."  David F. Herr, Multidistrict Litigation Manual § 5:24 (2024).  This is because when different classes of plaintiffs seek relief based on purchases of different products, even from the same defendant, "the potential for centralization to significantly reduce or eliminate conflicting

---

[1] Neither the Apple Watch nor the iPhone purchaser class is a subclass of the other.  Although the *Chiuchiarelli* Complaint purports to bring claims on behalf of an "Apple Watch subclass," the complaint's Apple Watch purchaser class is not a subclass:  It is both broader and narrower than the iPhone purchaser class.  *See Chiuchiarelli* Compl. ¶ 206.  It is broader because many Apple Watch owners in the proposed class purchased their Apple Watches directly from Apple, but did not purchase their iPhone directly from Apple, or did so prior to March 27, 2020.  *See id.* ¶ 133. It is narrower because a substantial majority of iPhone purchasers do not also own an Apple Watch. *See Giamanco* Compl. ¶ 161.

pretrial orders related to class certification is minimal" and discovery coordination suffices to improve efficiency in administration. *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 273 F. Supp. 3d 1371, 1373 (J.P.M.L. 2017). Just last year, the Panel in *In re Unilever Aerosol Products* rejected centralization of "two types of cases [that] involve different putative classes . . . who bought different products" from the same defendant, both of which allegedly contained benzene. 669 F. Supp. 3d 1366, 1367 (J.P.M.L. 2023). Similar examples abound. *See, e.g.*, *In re Light Cigarettes & Sales Pracs. Litig.*, 652 F. Supp. 2d 1379, 1380-81 (J.P.M.L. 2009) (declining to centralize an action raising "allegations with respect to *all* Marlboro cigarettes" with actions against the same defendant related to light cigarettes). For the same reasons, centralization of the iPhone and Apple Watch claims is not appropriate. Because the claims focus on distinct products, markets, and purchaser classes, centralization is not necessary to avoid conflicting pretrial orders, and would provide few efficiencies that cannot be obtained through discovery coordination.

**B.    The Apple Watch and iPhone Claims Do Not Share a Common Factual Core**

Mr. Giamanco alleges wide-ranging conduct by Apple to monopolize relevant smartwatch markets and prevent competitors from offering iPhone owners adequate alternatives to the Apple Watch. This includes software updates aimed at disrupting competing smartwatches' operations, illegal horizontal agreements with competitors, efforts to prevent users from finding apps that are compatible with competing smartwatches, and technological restrictions on competing smartwatches' ability to send text messages, offer digital wallets, and provide a variety of other services users demand. *Giamanco* Compl. ¶¶ 21-23, 44-72, 101-107, 120-126. Much of this conduct is not alleged in the iPhone claims. And even where the iPhone claims discuss restrictions on some of the same technologies, they focus on different restrictions, and do so in order to show

how Apple prevented the rise of "middleware" that would otherwise enable users to switch away from the iPhone.  *See, e.g.*, Dkt. 6-4 ("*Goldfus* Compl.") ¶ 187.

Despite these differences, the parties argue the relevant cases should be centralized because they share identical, or near-identical, claims challenging Apple's anticompetitive conduct in smartphone markets.[2]  These arguments simply ignore the presence of Apple Watch claims in *Chiuchiarelli* (and the absence of iPhone claims in *Giamanco*).  Only one party, Apple, even tries to defend centralization of the Apple Watch claims.  But its conclusory arguments fall short.  Apple erroneously claims that *all* pending actions, including *Giamanco*, "assert the same basic theories of liability, and propose near-identical class definitions."  Dkt. 44 at 1.  Apple does not explain how a class of Apple Watch purchasers is "near-identical" to a class of iPhone purchasers, let alone how the Apple Watch claims reflect the "same basic theor[y] of liability" as the iPhone claims.  *Id.* Indeed, Mr. Giamanco brings monopolization and horizontal restraint of trade claims under the Sherman Act that no other action raises.  *Giamanco* Compl. ¶¶ 179-203.

Instead of analyzing the claims, Apple merely declares that the iPhone and Apple Watch claims are each "litigating the same alleged conduct."  Dkt. 44 at 4.  As its only support for this assertion, Apple contends that all the cases, including *Giamanco*, "closely mirror if not copy verbatim" the allegations from "the Government's case."  *Id.*  Tellingly, however, Apple does not cite a single specific paragraph—or single sentence—that the *Giamanco* complaint copies from

---

[2] *See* Dkt. 6-1 at 6 (Related Actions "share identical and common legal claims and issues"); Dkt. 32 at 1 ("[a]ll pending actions" assert iPhone claims with "similar and overlapping class definitions . . . of consumers who have purchased iPhones"); Dkt. 34 at 1-3 (Related Actions consist of "substantively identical" claims regarding iPhones "on behalf of consumers who purchased iPhones"); Dkt. 40 at 8 ("Related Actions are consumer class actions for purchasers of iPhones"); Dkt. 41 at 1 (Related Actions allege "similar, if not identical, causes of action" that are "all brought on behalf of [a] class of consumers who purchased iPhones"); Dkt. 42 at 3 ("[a]ll of the related actions allege that Apple illegally monopolizes the smartphone market").

the Government complaint. Because there isn't one. Mr. Giamanco's action is strikingly different from the Government's action, and the *Giamanco* Complaint includes extensive factual allegations that appear nowhere in the Government's Complaint.[3]

Not only are the Apple Watch claims strikingly different from the iPhone claims, they also do not share a "common factual core" that could otherwise justify centralization. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1377 (J.P.M.L. 2021). Beyond the obvious differences between the markets and conduct at issue in the Apple Watch and iPhone Claims, the distinct nature of the claims' factual cores is apparent from examining the key "common questions of fact" that the *Chiuchiarelli* plaintiffs identify in their Motion:

(1) whether "Apple knowingly deters competition by designing iPhones to block cross-platform technologies between iPhones and Android smartphones in order [to] increase Apple's smartphone monopoly";

(2) whether "consumers who purchased iPhones . . . suffered economic losses due to Apple's monopolization of the relevant smartphone markets";

(3) whether "Apple unlawfully maintains its monopoly power and harms competition by imposing contractual restrictions, fees and taxes on app creation and distribution, specifically Super Apps and Cloud Streaming Apps"; and

(4) whether Apple uses "middleware" restrictions with respect to "messaging, smartwatches and digital wallets" to "insulate itself from competition."

Dkt. 6-1 at 2.

The first three questions are simply irrelevant to the Apple Watch claims. The Apple Watch claims do not turn on whether Apple engaged in any conduct to "increase [its] smartphone monopoly," do not seek to prove any economic losses by "consumers who purchased iPhones . . .

---

[3] These include allegations that Apple has issued software updates designed to disrupt smartwatch competitors, prevented users from discovering apps compatible with competing smartwatches, and entered into an illegal horizontal agreement with smartwatch competitors to limit competition. *Giamanco* Compl. ¶¶ 21-23, 45-47, 120-126.

due to Apple's monopolization of the relevant smartphone markets," and have nothing to do with "Super Apps and Cloud Streaming Apps," which have little to no relevance to smartwatches. Dkt. 6-1 at 2.

The fourth question at least involves technologies at issue in the Apple Watch claims: digital wallets, messaging apps, and smartwatches. But the Apple Watch and iPhone claims discuss these technologies for different reasons. The Apple Watch claims allege that Apple limits access to these technologies in order to grow its iOS-connected smartwatch monopoly, while the iPhone claims highlight these technologies as "middleware" that could otherwise make switching away from the iPhone easier.[4] In practice, this means different facts will be at issue with respect to digital wallets, messaging apps, and smartwatches in the iPhone and Apple Watch claims. For example, the iPhone claims allege that Apple "extract[s] payments from banks" through Apple Wallet, and limits the use of competing wallets on "online checkout pages" and for "in-app payment" on iPhones, ultimately making "it harder for iPhone users to purchase a different smartphone." *Goldfus* Compl. ¶¶ 130, 133, 136-137. Meanwhile, the Apple Watch claims focus on the ability of smartwatch competitors to offer competing mobile wallets. *Giamanco* Compl. ¶¶ 101-107.

With respect to messaging, the iPhone claims focus on Apple's restrictions on third-party messaging apps, and Apple's degradation of message quality when iPhone users receive messages from Android smartphones—each of which they claim hinders movement to competing smartphones. *See Goldfus* Compl. ¶¶ 100-113. In contrast, the Apple Watch claims focus not on third-party messaging apps, or messaging between iPhones and Android phones, but rather on

---

[4] *See, e.g.*, *Goldfus* Compl. ¶ 140; Dkt. 6-10 ("*Dwyer* Compl.") ¶ 144 (*Dwyer et al. v. Apple Inc.*, No. 24-cv-01844 (N.D. Cal.)); *see also* Dkt. 1-4 ("U.S. Compl.") ¶ 120 (*United States v. Apple Inc.*, No. 24-cv-04055 (D.N.J.)).

limitations in linking Apple's iPhone messaging app to third-party smartwatches—a distinct issue. *See Giamanco* Compl. ¶¶ 50-72.

Even the claims' discussions of smartwatch technology have a different focus:  The iPhone claims emphasize the *Apple Watch's* lack of compatibility with *other smartphones* (preventing unhappy iPhone users from switching to other smartphones), while the *Giamanco* complaint emphasizes *iPhone's* lack of compatibility with *other smartwatches* (preventing unhappy Apple Watch users from switching to other smartwatches).  *See*, *e.g.*, *Golfus* Compl. ¶ 114; *Giamanco* Compl. ¶¶ 42, 107, 145, 149.

So while a small portion of the conduct at issue in the iPhone claims implicates technologies at issue in the Apple Watch claims, the fact issues with respect to even those technologies are largely distinct.  The most one can say about the iPhone claims and Apple Watch claims is that they "share facts, in a broad sense."  *Unilever Aerosol Prods.*, 669 F. Supp. 3d at 1367.  But that is not enough.  Even when actions are "closely related and factually intertwined," *In re Amino Acid Lysine Antitrust Litigation*, 910 F. Supp. 696, 701 (J.P.M.L. 1995), or "common issues abound," David F. Herr, Multidistrict Litigation Manual § 5:4 (2024), centralization may nonetheless be inappropriate.  The Panel has been willing to separate and remand claims involving distinct, but related, products where "there may be some slight overlap in discovery."  *In re Kugel Mesh Hernia Patch Prod. Liab. Litig.*, 560 F. Supp. 2d 1362, 1364 (J.P.M.L. 2008) (transferring product liability claims related to hernia patch to centralized proceeding while separating and remanding claims related to allegedly defective staples used in conjunction with the patch because they "do not share sufficient questions of fact").

No "surface similarities" between the iPhone and Apple Watch claims can justify the centralization of these wholly distinct claims.  *Unilever Aerosol Prods.*, 669 F. Supp. 3d at 1367.

9

Given the absence of a common factual core between the iPhone and Apple Watch claims, the Panel should separate and remand the Apple Watch claims, should it choose to centralize the iPhone claims.

### C.   Any Non-Core Overlap Can Be Addressed Through Coordination

To the extent that there is any "slight overlap" in facts or discovery here, it can be managed through "coordination between the transferor and transferee courts." *Kugel Mesh Hernia Patch Prod. Liab. Litig.*, 560 F. Supp. 2d at 1363-64. Because "Section 1407 centralization should be the last solution after considered review of all other options," this Panel routinely denies centralization where "cooperation and coordination among the parties and the involved courts" will "avoid duplicative discovery and inconsistent pretrial rulings." *Nat'l Grid Tax Gross-Up Adder Litig.*, 669 F. Supp. 3d at 1382 (internal quotation marks omitted). Mr. Giamanco and his counsel are ready and willing to coordinate discovery for Mr. Giamanco's Apple Watch claims and the iPhone claims. Such cooperation and coordination between the iPhone and Apple Watch claims would suffice here—and no party arguing in favor of centralization suggests otherwise.

### II.   Declining to Centralize the Apple Watch Claims Will Promote the Just and Efficient Resolution of the Actions

In addition to the limited factual overlap between these actions, there are two additional reasons centralizing the Apple Watch and iPhone claims together would not promote the "just and efficient conduct" of the claims, or advance "the convenience of parties and witnesses." 28 U.S.C. § 1407(a).

*First*, the benefits of centralization are undermined by the fact that the iPhone purchasers and Apple Watch purchasers will require separate counsel that will need to coordinate—just as they would if the claims were not centralized. The same counsel cannot represent two distinct classes of plaintiffs in negotiating a global settlement in the same case where, as here, their claims

entitle them to different compensation, requiring counsel to allocate between the two.  *See*, *e.g.*, *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 254 (2d Cir. 2011).

*Second*, centralization would undermine the substantial gains for "the convenience of parties and witnesses" that would come from allowing Mr. Giamanco's action (and potentially other Apple Watch claims) to proceed in the Northern District of Illinois.  Mr. Giamanco's complaint raises detailed factual allegations not present in other complaints about the effect that Apple's conduct has had on third-party smartwatch competitors, *Giamanco* Compl. ¶¶ 8, 11-12, 29-43, 58-72, and multiple key third-party witnesses are located in or near Chicago.[5]  Third-party discovery will be an important part of the Apple Watch claims, and the Northern District of Illinois is a convenient forum for those third-party witnesses.  *See In re Suboxone Antitrust Litig.*, 949 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013) (weighing the interests of "potential third party witnesses" in determining venue).  To the extent the *Chiuchiarelli* plaintiffs or any other plaintiffs pursue Apple Watch claims, those claims can be coordinated among the parties or, if warranted, centralized into a separate MDL at a later date.  In the event the Apple Watch claims are centralized in a separate proceeding, Mr. Giamanco will maintain that those claims can be most conveniently litigated in the Northern District of Illinois.

For the convenience of the parties and witnesses, and the just and efficient resolution of these actions, the Panel should decline to centralize the Apple Watch claims.  Alternatively, to the

---

[5] One of the key witnesses, Motorola Mobility, is headquartered in Chicago.  *See Giamanco* Compl. ¶ 45.  Another key witness, Google, conducts a substantial portion of its smartwatch operations from Chicago.  *See id.* ¶ 11.  The remaining relevant parties are either in the Midwest, such as Garmin in Kansas, or divided between the coasts, including Apple in Northern California and Samsung Electronics America in New York, making Chicago a convenient, centrally located choice of forum.  *See id.* ¶¶ 8, 11-12; *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 190 F. Supp. 3d 1361, 1363 (J.P.M.L. 2016) (observing that centralizing "nationwide" litigation in Missouri would provide "a geographically central forum for this litigation that is both convenient and accessible to the parties and witnesses").

extent this Court decides to centralize Apple Watch claims with the iPhone claims, Mr. Giamanco

agrees with the parties who have urged that the District of New Jersey is a more appropriate forum.

## <u>CONCLUSION</u>

Mr. Giamanco respectfully opposes centralization of the Apple Watch Claims.

Dated: May 7, 2024                        Respectfully submitted,

By: /s/ *David Walchak*
David Walchak
dwalchak@koreintillery.com
George A. Zelcs
gzelcs@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Tel.: (312) 641-9750 / Fax: (312) 641-9751

Stephen M. Tillery
stillery@koreintillery.com
Carol O'Keefe
cokeefe@koreintillery.com
**KOREIN TILLERY LLC**
505 N 7th Street, Suite 3600
St. Louis, MO  63101

Steven F. Molo
Jordan A. Rice
Eric Posner
**MOLOLAMKEN LLP**
300 North Lasalle Street
Chicago, IL  60637
(312) 450-6700
smolo@mololamken.com

Jennifer Fischell
Kayvon Ghayoumi
**MOLOLAMKEN LLP**
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037

*Attorneys for Plaintiff Joseph Giamanco.*