# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | MDL No. 3113 |
|---|---|

**REPLY TO BERMAN OPPOSITION IN SUPPORT OF MOTION TO TRANSFER RELATED DEVELOPER ACTIONS TO THE DISTRICT OF NEW JERSEY FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I. Introduction

1. Before this Honorable Court is a motion to include Related Developer Actions in landmark multi-district litigation, *In Re Apple Smartphone*. At stake are the liberties of all Americans to conduct their tasks of daily life over the internet, without Apple's censorship and control. As articulated in the DOJ Complaint, "Apple exercises its control over app distribution and app creation to dictate how developers innovate for the iPhone, enforcing rules and contractual restrictions that stop or delay developers from innovating in ways that threaten Apple's power. In so doing, Apple influences the direction of innovation both on and off the iPhone" *(DOJ Complaint, ¶54)*. Apple's improper conduct towards developers directly curtails the end-product smartphone functionality available to consumers. This enables Apple to exert its economic, cultural, and political grip over all Americans.

2. Any attempt to argue that the underlying DOJ litigation in New Jersey does not include developers is either misinformed or not genuine. Accordingly, Greenflight's proposed class is ripe for inclusion in the MDL:

    *All U.S. Smartphone developers of any free app (zero-priced) that suffered economic losses through disallowance, censorship, and/or ranking suppression on the App Store.*

3. A proposed leadership[1] group (hereafter "Berman Opposition") in this MDL has filed a pleading which objects to the inclusion of "*sellers* of COVID-19 apps," completely missing the fact that this case is about developers of all free apps[2]. The developer plaintiffs are not sellers—Apple is.

---

[1] The Objection deems itself filed by "Majority Plaintiffs," but it is generally **not standard practice** for a proposed leadership group to file MDL documents on substantive matters—like the inclusion of additional classes or actions (e.g., developers)—as a leadership entity before the court has formally recognized or appointed them as such. This could indeed raise valid concerns about the propriety and appropriateness of their actions. It is not entirely clear who spearheaded the objection, but Steven Berman of Hagens Berman Sobol Shapiro is the first listed signatory. Significantly, undersigned counsel represents a dispute dating back to 2021 with Berman regarding the settling of *all* developer claims against Apple for $80million. Thankfully, the Honorable Yvonne Gonzales of Northern California District issued an order preventing the inclusion of free app developers in Berman's *Cameron* settlement(Exhibit A) Hence this objection does not arrive on a blank slate to the JPML.
[2] Free apps constitute the majority of all smartphone apps. They include software such as Facebook, Twitter/X. Their free price often indicates they are widely distributed and serve infrastructure purposes for large-scale communication. Hence, Apple's restriction of free apps raises concerns of censorship & political interference.

Respectfully, the Berman Opposition has it entirely backward, misunderstanding the role of developers and the broader implications of their own arguments. In a premature attempt to assert a leadership majority, the filing inadvertently underscores their unsuitability to lead this litigation.

4. This MDL is not just a matter about the $35 supra-competitive price Apple might gain on an entry-level iPhone; it is about their overreaching influence on culture, society, and opening competition to American innovation. It is a fight for the liberties and freedoms of all Americans: Apple's actions extend beyond mere economic harm and constitute a deliberate attempt to shape society.

5. The group behind the Berman Opposition fails to grasp the fundamental stakes of this case. Many have filed DOJ copycat complaints, apparently seeking to obtain a quick settlement on iPhone pricing. That would be a disservice to every American. This litigation is far more than a dispute over Apple's pricing tactics; it is about curbing the overexpansive reach of Big Tech and defending the freedoms of American citizens. The DOJ complaint highlights that Apple's anticompetitive conduct *"not only limits competition in the smartphone market but also reverberates through industries…including financial services, fitness, gaming, social media, news media, entertainment, and more."*

6. To take direction from the *Berman Opposition*—who clearly misunderstand the true nature and significance of this litigation—to guide this MDL (by kicking out developers from the starting line) would set a dangerous precedent. This is a matter that requires leadership attuned to the broader societal and economic implications, not one that narrowly focuses on a quick class settlement, actively resisting a mere few weeks of delays, necessary to properly integrate developers. The argument put forth by the so-called majority that this is solely about purchaser pricing harm is, in fact, a compelling reason against their suitability as leaders.

7. From the very inception of MDL 3113, as evidenced by Docket Item 1-1, it has been unequivocally clear that this case fundamentally concerns the integral relationship between developers and consumers in addressing Apple's alleged anticompetitive conduct. *Chiuchiarelli's* Motion to

Transfer, which led to the creation of MDL 3113, explicitly identifies developers as central to the issues being litigated, highlighting their role alongside consumers in the broader allegations against Apple. *Chiuchiarelli's* Motion clearly outlines that Apple's alleged anticompetitive practices are not limited to its control over consumer pricing for iPhones but extend deeply into the app development ecosystem. The Motion describes how Apple allegedly deters competition by blocking cross-platform technologies between iPhones and Android smartphones, actions that harm both consumers and developers. The motion explicitly references Apple's imposition of "contractual restrictions, fees, and taxes on app creation and distribution," which directly targets developers. Thus, from the outset, the relationship between developers and consumers is presented as symbiotic, with the harm to one group inherently affecting the other.

8. The arguments presented by the *Berman Objection* to exclude developers from the MDL are fundamentally at odds with the foundational basis upon which this MDL was created. The *Chiuchiarelli* Motion, relying upon the underlying DOJ litigation, clearly indicates that developer-related issues are central to understanding Apple's alleged monopolistic practices and their broader impact.

9. Furthermore, the DOJ Complaint, which was a key exhibit in the original Motion to Transfer, aligns with this view by stating that Apple's conduct has led to less innovation and fewer choices for consumers—outcomes that are directly tied to Apple's restrictive practices towards developers. Any attempt by the *Berman Objection* to marginalize the role of developers fails to recognize this integral relationship, which is crucial for a comprehensive resolution of the antitrust issues at hand. To exclude developers from the MDL would result in a piecemeal approach that is likely to be less effective in achieving meaningful change.

## II. Statement on U.S. Department of Justice Apple Litigation

10. From the perspective of forest versus trees, the DOJ complaint provides authoritative guidance highlighting the intricate web of Apple's monopolistic practices that have ensnared both

developers and consumers alike. The government theory is clear and compelling: to dismantle Apple's stranglehold on the smartphone market, it is imperative to understand how conduct has stifled innovation and choice for all market participants. The result is a meticulous outline of the functional relationship between developers and consumers—a relationship Apple has systematically exploited to maintain its dominance. To achieve a truly comprehensive resolution in this landmark MDL, it is essential that both developers and consumers join forces to present a united front against Apple's monopolization conduct.

11. The Justice Department complaint details how Developers drive innovation and enrich the user experience with new apps, features, and services. Consumers, in turn, are the end-users who benefit, flocking to devices that offer the most diverse and engaging experiences. Apple, understanding this dynamic, has positioned itself as the gatekeeper of this ecosystem, leveraging its control to extract maximum profits from both sides while stifling any threat to its monopoly.

12. By restricting app distribution and imposing onerous fees on developers, Apple limits the types and quality of apps available to consumers, thereby reducing consumer choice and raising costs. At the same time, by manipulating APIs and selectively enforcing app store guidelines, Apple ensures that developers cannot create apps that might encourage users to switch away from the iPhone. This dual approach allows Apple to maintain a stranglehold over both groups, effectively locking them into its ecosystem.

13. To suggest, as the Berman Opposition mistakenly does, that the MDL can effectively proceed without developer representation is to ignore this fundamental interdependence. The very argument that developers' cases might complicate or delay MDL proceedings inadvertently proves the necessity of their inclusion. The complexity introduced by developer claims is precisely the complexity Apple has engineered to fortify its monopoly—a complexity that must be addressed holistically to achieve meaningful antitrust enforcement. This case, therefore, is not one where stakeholders should be pitted against one another but rather where inclusivity and cooperation are

key.

14. Apple's actions—ranging from imposing a 30% "tax" on developers to selectively limiting API access—are not just anticompetitive but also exclusionary. These practices not only harm developers by reducing their profitability and stifling their ability to innovate, but they also deprive consumers of the benefits of a competitive market, including lower prices, more choices, and higher-quality products in order to conduct daily essential tasks of work, school, and living which now require a smartphone.

15. To dismantle this monopoly, all affected parties—developers and consumers alike—must be included in the MDL. The DOJ's own complaint provides a roadmap for how this can be achieved: by showcasing how Apple's anticompetitive conduct has harmed both developers and consumers, we can present a united front that comprehensively addresses the full scope of Apple's misconduct. By working together, developers and consumers can highlight the breadth and depth of Apple's monopolistic practices, demonstrating to the court that these practices are not isolated incidents but part of a broader strategy to control the market and suppress competition.

16. Excluding developers from the MDL would result in an incomplete adjudication of Apple's anticompetitive practices. Moreover, by presenting a united front, developers and consumers can provide the court with a more comprehensive understanding of the harm caused by Apple's conduct, increasing the likelihood of a favorable outcome for all parties involved.

### III. Reply Argument in Support of Transfer & Developer Representation in the MDL

**Failure to Object to Developer Inclusion: A Waiver of Objections**

17. The *Berman Opposition* conspicuously avoids making any direct, explicit objection to the inclusion of developers in the MDL. Instead, they erroneously reference "COVID-19 Plaintiffs" in a manner that confuses the issue and fails to differentiate between the varied developer plaintiffs and class members. Of the four plaintiffs, only Coronavirus Reporter and PhantomALERT are

exclusively[3] involved in COVID-19 app development. In contrast, Greenflight develops caller ID, pharmaceutical, and blockchain apps; CALID develops scheduling apps.

18. By failing to specifically address or object to the inclusion of non-COVID-19 developers, *Berman* implicitly concedes that developer actions are appropriately within the scope of the MDL. Their focus on a narrow subset of developers reveals a strategic omission intended to avoid going on the record against the broader inclusion of Related Developer Actions. Such a selective objection is inadequate and constitutes a waiver of any broader opposition to developer inclusion in the MDL.

**Ignoring DOJ's Indications of Developer Impact: A Misstep in Strategic Argument**

19. The DOJ Complaint clearly articulates that harm to developers translates into harm to consumers, thereby making developer-related claims directly relevant to the MDL. Berman's opposition to the inclusion of developer issues in the MDL seems to disregard this critical aspect of the DOJ's theory of harm, which would unduly narrow the scope of the MDL and, from the outset, improperly limit the MDL's ability to effect needed change in how Big Tech influences all of our lives.

20. To exclude developers from meaningful participation in the MDL would not only ignore the DOJ's findings but also undermine the comprehensive adjudication of Apple's alleged anticompetitive practices. Such a limitation would be detrimental and could result in an incomplete resolution of the complex issues at stake. It is essential for the JPML to intervene at this early stage to ensure that all relevant parties, including developers, are adequately represented.

**Misconstrued Procedural Timeline - Leadership Still Undecided**

21. Two weeks after Plaintiffs filed their Motion to Transfer, the "Majority Plaintiffs" filed a proposed MDL "Direct Purchasers' Track" putative leadership motion on August 8, 2024. This motion, spearheaded by Hagens Berman, is actively contested by Hausfeld/Susman, who filed their own alternative leadership proposal and supporting briefings just last Friday, the day of filing the

---

[3] PhantomALERT pioneered road traffic mapping, now incorporated in Waze and Google maps. The PhantomALERT complaint focuses on COVID-19 functionality within its pioneering driving app. Hence, it is clear the COVID-19 developers are general developers of other widely used products, such as driving maps, caller ID, scheduling, etc.

*Berman Objection*. The Hausfeld/Susman opposition raises serious concerns about the utility of Hagens Berman's proposal, citing established guidelines concerning a "top-heavy" leadership group. As the briefing on this matter is ongoing and US District Judge Neals has yet to finalize the leadership committee, Berman's assertion that it is too late to represent developers in the MDL leadership is both incorrect and not a majority opinion of the Neals MDL Court.

22. Furthermore, the MDL currently envisions not only a direct iPhone purchaser track but also a proposed Apple Watch track. In light of this, it would be entirely reasonable to establish a Developer Leadership Track or even incorporate developers into the existing tracks for direct and indirect iPhone purchasers. Berman's opposition conveniently omits the Smartphone Track.

**Centralization is Mandated by Common Questions of Fact**

23. The JPML has already determined that centralizing cases that share common questions of fact regarding Apple's monopolistic practices is appropriate: "*These include assertions that Apple has monopolized or attempted to monopolize the smartphone market by restricting app development and distribution, thereby stifling competition and innovation.*" (JPML Transfer Order, p.1). Given this clear mandate, it unclear how the Berman Opposition posits that developer actions introduce separate issues that could complicate MDL proceedings.

24. To the extent Berman suggests that developer actions could be litigated separately, without compromising the efficiency of the MDL process, the argument is flawed. Separate litigation would lead to duplicative discovery, increased litigation costs, and inconsistent rulings—outcomes that the MDL process is designed to prevent. The inclusion of developers is necessary so that all aspects of Apple's anticompetitive conduct are addressed comprehensively and consistently.

**Judicial Economy and Efficiency**

25. The primary objective of multidistrict litigation is to ensure the just, speedy, and inexpensive determination of actions that involve common questions of fact. The JPML has previously recognized the importance of judicial economy in MDL proceedings, as noted in *In re Johnson &*

*Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, where centralization was deemed essential to coordinate discovery efficiently and manage overlapping legal issues, hence reducing litigation costs, and preventing conflicting pretrial rulings.

**Procedural Fairness and the Risk of Inconsistent Judgments**

26. Centralizing the developer actions is also necessary to ensure procedural fairness and avoid the risk of inconsistent judgments. The Related Developer Actions share substantial factual and legal overlap with the DOJ's complaint and other cases in MDL No. 3113. This overlap includes allegations of monopolistic practices, suppression of cross-platform technologies, and imposition of restrictive fees and conditions that harm both developers and consumers.

**Forfeited Objection to Levine Plaintiffs Inclusion of Developer Actions**

27. The *Berman* submission similarly fails to object to the fact that the *Levine Plaintiffs* already joined developers into the MDL four months ago. During the original JPML briefing for MDL #3113, the *Levine* MDL plaintiffs included developer plaintiffs, including Greenflight, in the service list for inclusion in the MDL. At that time, neither *Hagens Berman* nor any of the other MDL plaintiffs objected to the inclusion of Greenflight. It is now well past the deadline for such objections, and their current opposition based solely on COVID-19 relevance does not constitute a valid objection to the inclusion of Related Developer Actions, generally. Notably, Levine has not signed Berman's opposition to inclusion of Related Developer Actions.

28. Not a single MDL participant, most notably Apple, objected to *Levine Plaintiff's* inclusion of developers, specifically Greenflight Venture Corporation, in its service list. Their failure to do so necessitates corrective action to ensure procedural fairness. Once Levine's motion was served upon the Wyoming Clerk, Plaintiffs understood they were a part of the MDL Briefing, and it is patently unfair to sever them four months later. Including the Related Developer Actions in the MDL will rectify this procedural oversight and ensure that all parties are treated equitably.

**Hagen Berman's *Cameron* Position Raises Substantial Ethical Concerns**

29. The *Berman Opposition* classifies the Developer Plaintiffs as COVID-19 Developers, but Berman knows otherwise; undersigned counsel wrote him about Greenflight's PayPhone app (unrelated to COVID) as far back as August 2021, to voice objection to a controversial Apple developer antitrust settlement his was finalizing. (See Exhibit B). But more importantly, the next day, the settlement itself was widely criticized in the media for failing to obtain any meaningful change against Apple (See Exhibit C). It is therefore evident that Berman's opposition to the inclusion of developers in the MDL is conflicted and undermined by their own prior actions and statements regarding developer settlements in antitrust litigation against Apple. Hagens Berman's prior involvement in the *Cameron v. Apple* 19-cv-3074 (N.D. Cal.) case, their handling of the settlement therein, and their current opposition to developer inclusivity raise serious ethical concerns and call into question the legitimacy of their arguments and motives in this matter.

30. In their pending leadership application, Hagens Berman touts their role in the *Cameron v. Apple* case, highlighting it as a significant credential that qualifies them for a leadership position in the MDL. (*See 24-md-3113-JXN D.E. 22 p.12*). Hagens Berman's reliance on their success in *Cameron* to bolster their leadership application fundamentally undermines their argument that developers should not be included in the MDL. However, this narrative is starkly contradicted by the history of their actions and the concerns raised by other developers, including undersigned counsel's own clients, regarding the fairness and adequacy of the *Cameron* settlement.

31. The *Cameron* settlement, which settled out Apple developer claims for a paltry $80 million, was criticized as grossly inadequate given the estimated damages to developers, which counsel for the Plaintiffs estimates could exceed $200 billion. The settlement didn't even obtain 'pennies on the dollar,' and was far from achieving meaningful change against Apple's monopolistic practices. Indeed, one of counsel's clients characterized the settlement as "absurd." Knowing that undersigned counsel advocates for developer rights reform, rather than PR settlements supported for Apple, it is no wonder the one page *Berman Opposition* was filed so hastily.

32. After undersigned counsel objected to this settlement and sought to engage Hagens Berman in discussions to address these grievances, they were simply ignored. As evidenced by Mathews' letter, there was a clear attempt to raise these issues directly with Hagens Berman after Apple's counsel, Rachel Brass of Gibson Dunn, instructed that objections could not be processed without engaging with Berman directly. This raises a critical point: Hagens Berman had ample opportunity to address developer concerns substantively but chose to proceed with a settlement which was lucrative to them but nobody else.

33. It is notable that Brass from Gibson Dunn relayed to Mathews by phone that Hagens Berman "self-funded" the *Cameron* litigation and has become quite wealthy from class settlements, which could suggest a pattern of prioritizing quick settlements over achieving substantive change for class members. To Plaintiffs and other class members, this represents a worst-case scenario: a nominal settlement that enriches class action attorneys while leaving developers without meaningful relief or change in Apple's conduct.

## IV. Conclusion

34. Any attempt to exclude developers from the MDL contradicts the original intent and scope of this litigation, as well as the underlying Justice Department antitrust proceedings, and would subsequently hinder the MDL's ability to address the full breadth of Apple's monopolistic practices. The JPML should therefore grant the Motion to Transfer Related Developer Actions to the District of New Jersey for coordinated or consolidated pretrial proceedings to ensure a comprehensive resolution of these intertwined issues.

Dated: August 26, 2024.                    Respectfully submitted,

**AMERICAN WEALTH PROTECTION**
/s/ Keith Mathews
Keith Mathews
1000 Elm Street, Suite 800
Manchester, NH 03105
603-622-8100
keith@awplegal.com